## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>               Plaintiff,<br><br>    v.<br><br>NEOPHOTONICS CORPORATION, CHARLES J. ABBE, BANDEL L. CARANO, MICHAEL J. SOPHIE, KIMBERLY Y. CHAINEY, RAJIV RAMASWAMI, IHAB TARAZI, TIMOTHY S. JENKS, YANBING LI, and SHERI SAVAGE,<br><br>               Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Taylor ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against NeoPhotonics Corporation ("NeoPhotonics" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Lumentum Holdings Inc., ("Lumentum") an investment vehicle managed by Lumentum Capital Management, LP ("Lumentum"), will acquire the Company through Lumentum's subsidiary Neptune Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Lumentum is a Delaware corporation with its principal executive offices located at 1001 Ridder Park Drive, San Jose, California 95131. Lumentum's common stock trades on the Nasdaq Global Select Market under the ticker symbol "LITE." Non-party Merger Sub is a Delaware corporation and wholly owned subsidiary of Lumentum.

2. On November 4, 2021, NeoPhotonics and Lumentum jointly announced their entry into an Agreement and Plan of Merger dated the preceding day (the "Merger Agreement"). That agreement provides NeoPhotonics stockholders will receive $16.00 in cash for each share of Company common stock they own (the "Merger Consideration").[2]

3. On December 1, 2021, NeoPhotonics filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that NeoPhotonics stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

---

[2] The approximate value of the Proposed Transaction is $918 million

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of NeoPhotonics.

10. Defendant NeoPhotonics is a Delaware corporation with its principal executive offices located at 3081 Zanker Road, San Jose, California 95134. NeoPhotonics' common stock trades on the New York Stock Exchange under the ticker symbol "NPTN."

11. Defendant Charles J. Abbe ("Abbe") is and has been Lead Independent Director and a director of the Company since 2012.

12. Defendant Bandel L. Carano ("Carano") is and has been a director of the Company since 2004.

13. Defendant Michael J. Sophie ("Sophie") is and has been a director of the Company since 2006.

14. Defendant Kimberly Y. Chainey ("Chainey") is and has been a director of the Company since 2021.

15. Defendant Rajiv Ramaswami ("Ramaswami") is and has been a director of the Company since 2014.

16. Defendant Ihab Tarazi ("Tarazi") is and has been a director of the Company since 2015.

17. Defendant Timothy S. Jenks ("Jenks") is Chairman of the Board and has been President, Chief Executive Officer ("CEO"), and a director of the Company since April 1998.

18. Defendant Yanbing Li ("Li") is and has been a director of the Company since 2019.

19. Defendant Sheri Savage ("Savage") is and has been a director of the Company since July 2, 2021.

20. Defendants identified in paragraphs 11-19 are referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**The Proposed Transaction**

21. On November 4, 2021, NeoPhotonics announced in relevant part:

SAN JOSE, Calif., Nov. 4, 2021 -- Lumentum Holdings Inc. (NASDAQ: LITE) ("Lumentum") and NeoPhotonics Corporation (NYSE: NPTN) ("NeoPhotonics") today announced that they have entered into a definitive agreement under which Lumentum will acquire NeoPhotonics for $16.00 per share in cash, which represents a total equity value of approximately $918 million. The transaction has been unanimously approved by the Boards of Directors of both companies.

The addition of NeoPhotonics expands Lumentum's opportunity in some of the fastest growing areas of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. The integrated company will be better positioned to serve the needs of a global customer base who are increasingly utilizing photonics to accelerate the shift to digital and virtual approaches to work and life, the proliferation of IoT, 5G, and next-generation mobile networks, and the transition to advanced cloud computing architectures. The combination creates a stronger partner for customers, with the ability and intent to invest strongly in innovation and manufacturing capacity.

"With NeoPhotonics, we're making another important investment in better serving our customers and expanding our photonics capabilities at a time when photonics are at the forefront of favorable long-term market trends," said Alan Lowe, Lumentum President and CEO. "At the center of our strategy is a relentless focus on developing a differentiated portfolio with the most innovative products and technology in our industry so that we can help our customers compete and win in their respective markets. Adding NeoPhotonics' differentiated products and technology and innovative R&D team is consistent with this strategy and together, we will better meet the growing need for next generation optical networking solutions."

"We are confident this transaction will make us an even better partner to our customers, while enabling our team to deliver significant, long-term value to our stockholders. We look forward to welcoming NeoPhotonics' talented team of employees to Lumentum," concluded Mr. Lowe.

"Today's announcement is an exciting milestone for NeoPhotonics," said Tim Jenks, NeoPhotonics President, CEO, and Chairman. "The increasing global demand for our ultra-pure light tunable lasers and photonics technologies for speed over distance

applications is more apparent than ever, and Lumentum is the ideal partner to serve our customers on a larger scale. Lumentum recognizes the importance of NeoPhotonics' differentiated photonic technology and products, which are well positioned for accelerated growth in the coming years. The combination's complementary product portfolio, increased scale, breadth of customer application knowledge, and R&D capabilities will accelerate innovation, better serve customers, and deliver significant and immediate value to our stockholders. Importantly, this transaction is a testament to the hard work and dedication of our employees. I look forward to working with Lumentum leadership to ensure a smooth transition as we begin an exciting new chapter as one company."

**Compelling Strategic and Financial Benefits**

- **Comprehensive Capabilities for the Significant 400G+ Optical Network Opportunity:** The complementary combination accelerates Lumentum's exposure to and penetration of some of the fastest growing portions of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. Internet, cloud, mobile, and broadband access network capacity requirements continue to grow at an unrelenting pace driven by the digital transformation of work and life, high-bandwidth video, gaming, and other applications. The combined company will have a broader portfolio of next generation products and technologies addressing the market opportunity created by the strong growth in network capacity requirements created by these applications.

- **Positioned to Better Serve Market Leading Customers:** The combined company will comprise a solid financial position and the ability to invest in new products, technologies, and manufacturing capabilities, with a broader portfolio of products and technology relevant to global leaders in cloud and communications networks infrastructure. This transaction underscores Lumentum's commitment to the photonics and communications markets, and the combined company will continue to heavily invest in innovation and manufacturing capabilities in order to meet and exceed customers' photonics needs – today and into the future.

- **Accelerated Innovation from Combined R&D and Technology Capabilities Globally:** The combination increases the scale and scope of Lumentum's innovation engine globally. The company will benefit from R&D and manufacturing capabilities globally across Asia, North America, and Europe. With a broader global talent pool, Lumentum will be well positioned to accelerate innovation and collaborate more closely with market and technology-leading customers worldwide.

- **Poised to Capture Attractive New Growth Opportunities:** Photonics will play an increasing role in new approaches to automobiles and delivery vehicles, manufacturing, industrial sensing, safety and security, health care and the life sciences, and addressing climate change. The combined organization will be poised to capture new market growth opportunities created by these trends due to the combined R&D innovation engine and technology base. The combination's breadth of technology and vertical integration, from underlying components and

5

materials to sub-systems and systems, increases the ability to participate in the technology stack of new end market customers increasingly utilizing photonics.

- **Delivers Substantial Run-Rate Synergies and Solid Accretion to Lumentum's Earnings**: There are significant efficiency gains in combining derived from increased scale, reducing redundancies, and leveraging the best capabilities in the combination.  The combined company is expected to generate more than $50 million in annual run-rate synergies within 24 months of the closing of the transaction.  The transaction is expected to be immediately accretive to the combined company's non-GAAP earnings per share upon closing.  The combined company is expected to have a solid balance sheet and strong operating cash flows, creating substantial financial flexibility to pursue continued growth initiatives.

**Transaction Terms, Financing, and Approvals**

The purchase price represents a premium of approximately 39% to NeoPhotonics' closing stock price on November 3, 2021.  Lumentum intends to finance the transaction through cash from the combined company's balance sheet.

Related to the transaction, Lumentum will provide up to $50 million in term loans to NeoPhotonics to fund anticipated growth, which may require increased working capital and manufacturing capacity.

The transaction is expected to close in the second half of calendar year 2022, subject to approval by NeoPhotonics' stockholders, receipt of regulatory approvals, and other customary closing conditions.

**Advisors**

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Lumentum and Wilson Sonsini Goodrich & Rosati, Professional Corporation served as legal advisor.  Union Square Advisors LLC served as exclusive financial advisor to NeoPhotonics and Cooley LLP served as legal advisor.

**The Proxy Statement Contains Material Misstatements or Omissions**

22.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to NeoPhotonics's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

23.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the valuation analyses underlying the fairness

opinion provided by the Company's financial advisor Union Square Advisors LLC ("Union Square").

***Material Omissions Concerning the Company's Financial Forecasts and the Financial Analyses Relied on by the Board***

24. The Proxy Statement omits material information regarding the Company's financial projections, including the line items underlying the Company's financial forecasts for the following: (a) Non-GAAP Gross Profit, (b) Non-GAAP Operating Profit before SBC, (c) Adjusted EBITDA, (d) Non-GAAP Operating Profit after SBC, (e) Non-GAAP Net Income, (f) Non-GAAP Unlevered Net Income, (g) Unlevered Free Cash Flow, and (h) Pre-tax Profit for Cash Tax Provision.

25. The Proxy Statement also omits material information regarding the data and inputs underlying the valuation analyses performed by Union Square.

26. The Proxy Statement describes Union Square's fairness opinion and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Union Square's work. As a result, NeoPhotonics stockholders cannot assess what significance to place on Union Square's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

27. With respect to Union Square's *Selected Publicly Traded Company Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial multiples and metrics for each of the comparable companies and transactions observed by Union Square, respectively.

28. With respect to Union Square's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the inputs and assumptions underlying the range of discount rates Union Square utilized in connection with the analysis; (b) the implied terminal multiples resulting from the analysis; (c) NeoPhotonics' net cash used in the analysis; and (d) the fully diluted shares of NeoPhotonics common stock outstanding as of November 1, 2021.

29. With respect to Union Square's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (a) each of the transactions observed in the analysis; and (b) the premiums paid in each of the transactions.

30. With respect to Union Square's *Research Analyst Price Targets for NeoPhotonics Corporation*, the Proxy Statement fails to disclose: (a) the price targets observed in the analysis; and (b) the sources thereof.

31. The omission of this material information renders the statements in the "Financial Projections" and "Opinion of Union Square Advisors LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other NeoPhotonics stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

33. Plaintiff repeats all previous allegations as if set forth in full.

34. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements,

in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Union Square. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39. Plaintiff repeats all previous allegations as if set forth in full.

40. The Individual Defendants acted as controlling persons of NeoPhotonics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NeoPhotonics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed

with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a

direct and proximate result of defendants' conduct, NeoPhotonics's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NeoPhotonics, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to NeoPhotonics stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 3, 2022

**LONG LAW, LLC**

By */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*